WILLIAM L. JONES, as Executor, etc., Respondent, v. THEODORE
H. BUTLER, Appellant.

Articles of copartnership between B., plaintiff's testator, and defendant,
stated that B. had contributed stock estimated to be of the value of
$15,775.48, and defendant stock estimated at $3,363.77. By the articles,
all profits and " all losses happening to the firm, whether from bad debts,
depreciation of goods, or any other cause or accident, and all expenses of
the business" were to be borne equally by the copartners. In an action
for an accounting, it appeared that the estimates were based upon the
cost price of the stock so contributed, that the assets of the firm were in-
sufficient to pay its debts, also that the loss was incurred principally by
the depreciation in the value of the stock on hand, much of which was
worthless at the time the articles were executed. *Held*, that plaintiff was
entitled to have the loss of capital equally divided; and that defendant
should be charged with one-half of the loss sustained by his copartner
in excess of his own loss.

Also *held*, that this construction was not affected by a clause in the articles,
providing that at the expiration or dissolution of the copartnership if
the parties could not agree as to a division, the partnership assets should
be sold and proceeds equally divided after paying the debts in proportion
to the capital invested.

But *held*, that defendant was not bound by the valuation contained in the
articles; that he was simply bound to pay an equal proportion of the
actual loss.

(Argued January 23, 1882; decided January 31, 1882.)

APPEAL from order of the General Term of the Supreme
Court, in the fourth judicial department, made June 9, 1880,
which reversed a judgment in favor of defendant, entered
upon the report of a referee. (Reported below, 23 Hun, 367.)

This was an action for an accounting, brought by the execu-
tor of a deceased copartner against the surviving partner.

The copartnership was in the book and stationery business,
which has been carried on for many years in the city of Buffalo;
first by Theodore Butler, the deceased, who afterward took
his son, the defendant, into partnership, and the business was
thereafter continued under the copartnership name of " Theo-
dore Butler & Son." Written articles of copartnership were
executed from time to time between the parties, which pro-

vided that each party should put in as capital the amount of his then interest in the stock of goods and other assets on hand, which were, as the referee found, though old and shop-worn, and much of them good for nothing save for waste paper, inventoried for the purpose of specifying the amount of capital advanced by each party at their cost price. On the 21st of February, 1873, the parties executed articles of copartnership in which were set forth the terms of their copartnership, which it was provided should commence on the 1st day of February, 1873, and should continue for the period of three years; each party thereby agreeing to contribute to the funds of the copartnership as follows: Theodore Butler, stock, at $15,-775.48, and Theodore H. Butler, stock, at $3,363.77, the same being the amount of stock, notes, accounts and cash on hand on the 1st of February, 1873. It was further provided by the said articles as follows: "All profits which may accrue to the said copartnership shall be divided equally, and all losses happening to the said firm, whether from bad debts, depreciation of goods, or any other cause or accident, and all expenses of the said business shall be borne by the said partners equally." And it was further provided that neither party should be entitled to interest on his share of the capital invested, and that "at the expiration of the aforesaid term or earlier dissolution of this copartnership, if the said parties or their legal representatives cannot agree in the division of stock then on hand, the whole copartnership effects, except the debts due the firm, shall be sold at public auction, at which both parties shall be at liberty to bid and purchase like other individuals, and the proceeds shall be divided, after paying the debts of the firm, in proportion as per capital invested."

The business of the firm was carried on for nearly three months after the time fixed for the expiration of the partnership without the execution of any new articles, when the senior partner died, on the 26th of April, 1876. After the decease of the senior partner the survivor continued the business, closing out the stock and collecting the accounts due the firm and paying off the indebtedness as fast as possible. No letters testa-

mentary were issued until some ten months after the decease of the senior partner, and the survivor made purchases of some new goods, such as were necessary to facilitate the sale of the old stock, in the name of the firm. After letters testamentary were issued to the plaintiff, as executor, on the 24th of February, 1877, gave the defendant notice that he could not consent to have the defendant continue to carry on the business of the late firm, and demanded an account of the partnership property and effects of the late firm and on the 21st of February, 1877, the surviving partner sold the entire balance of the stock of goods by private sale.

The referee found on a summary of the whole accounts that the whole amount of the assets of the said copartnership has been applied by the defendant in payment of the debts of the firm and the expenses of closing up the copartnership, and there still remains unpaid of the indebtedness of the said copartnership the sum of $160, and reported that the defendant was entitled to a judgment for a dismissal of the complaint.

*Day & Romer* for appellant. The clause in the article of copartnership relating to the profits and losses of the firm has regard to the yearly settlements as shown by the balance sheets, while the last clause relates to the final winding up of the affairs of the firm and the distribution of its proceeds. (*Eastwood* v. *McNulty*, Com. of App., 44 How. Sp. T. R. 392.)

*Wm. L. Jones*, respondent, in person. The capital is a debt which the partnership owes to those who contributed it, and must be paid like all other liabilities. ( *Whitcomb* v. *Converse*, 119 Mass. 38 ; *Norvell* v. *Norvell*, L. R., 7 Eq. 538 ; *Neubeck* v. *Kohlberg*, 3 Daly, 407 ; *Seighorbuer* v. *Weissenborn*, 20 N. J. Eq. 172 ; *Pearce* v. *Pearce*, 77 Ill. 284 ; Lindley on Partnership [3d ed.], 696, 827, 828 ; Wood's Collyer on Partnership, 1, 519.) Without any express provisions to that effect, the law makes it incumbent on the survivor to give the representative of deceased partner information in regard to the firm business. ( *Ogden* v. *Astor*, 4 Bradf. 313.) The business ought to have been closed

at once; and it was the defendant's duty to account to the plaintiff. (*West* v. *Skip*, 1 Ves. Sr. 239; 2 Pars. on Cont. 201, 202; *Ogden* v. *Astor*, 4 Bradf. 313; Dayton on Surrogates, 277; 1 Paige, 393; 2 Edw. Ch. 28.) Defendant was entitled to no compensation for his services in winding up the business. (1 Pars. on Cont. 201; *Ames* v. *Downing*, 1 Bradf. 321; *Lee* v. *Lasbrook*, 8 Dana, 214.)

MILLER, J. By the articles of copartnership entered into between the testator and the defendant, all profits which might accrue to the partnership were to be divided equally, and " all losses happening to the firm, whether from bad debts, depreciation of goods, or any other cause or accident, and all expenses of the business" were to be borne by the parties equally. Under this provision of the agreement we think that no good reason is shown why the losses should not be thus divided without regard to the amount of capital contributed by each of the partners. We therefore concur with the opinion of the General Term, that the loss of capital should be equally distributed; and that if, upon the taking of the account, it appears that one party has lost more than the other, the proper way to make an equal distribution of loss is by charging the one who has lost the least with an amount which will make the loss equal. The authorities cited fully sustain this principle and the account should be stated accordingly. The clause in the agreement which provides, that at the expiration of the term, or earlier dissolution of the copartnership, if the parties or their legal representatives cannot agree as to the division of the stock on hand, the whole copartnership effects, except the debts due the firm, shall be sold at public auction at which both parties may bid and purchase, and the proceeds be equally divided, after paying the debts of the firm, in proportion to the capital invested, does not affect the provision first referred to and relates only to the sale of goods and not to the profits and losses. The latter constitute entirely a different matter and are in no way connected with the sale of the stock which is provided for.

The losses of the copartnership accrued mainly from a depreciation of the old stock on hand at the time of its formation, a greater portion of which remained at the time of the death of the testator. It had been in the store for many years, had become shop-worn, faded, and much of it good for nothing but waste paper and actually of but little if of any value. At the time of the formation of the partnership each of the copartners agreed to and did contribute certain portions toward the same, consisting of stock, notes, accounts, etc., which were on hand on the first day of February, 1873.

The valuation at which the goods, etc., were estimated at this time cannot, we think, be regarded as the true basis upon which to determine the actual losses sustained, as they evidently were put down without regard to the actual value and with no intention of estimating the same at the time. It is very clear that neither party understood that the cost price of the stock was to be regarded as its true value, and the amount then fixed cannot be considered for the purpose of liquidating the copartnership affairs. There is, therefore, no ground for the assumption that it was correct and actually represents the interest of the several partners in ascertaining the losses. The real loss would be the amount of injury actually sustained, and if the stock of goods was estimated at twice or three times its value the loss would be proportionably less than the estimate. To allow the full amount of such estimate would be far beyond any loss sustained by depreciation of goods, and not within the intention or the spirit of the articles of copartnership. The estimate of the amount of stock, etc., was not, we think, an agreement as to its value, which should be binding upon an accounting in which the actual losses are to be ascertained, and was not obligatory upon the parties for any such purpose. The object was indemnity and this would be fully accomplished by an estimate of the stock at its true value. The finding of the referee shows that much of it was of no account and worthless, and there can be no difficulty upon the accounting which must be had in the Supreme Court, by proof to take the account and

to ascertain what profits were realized and what losses were sustained on the basis indicated.

As the General Term were right in holding that each party should bear an equal share of the losses the order must be affirmed and judgment absolute upon defendant's stipulation should be ordered for the plaintiff, with costs.

All concur.

Order affirmed, and judgment accordingly.