On April 24th, 1939, complainant and defendant agreed to form a partnership for the manufacture of clothing and to provide the partnership with capital by transferring to it all the assets of a corporation owned by them. The bill and answer both show that the parties agreed that the net value of the assets was $24,715 and that of this sum, complainant's contribution to the partnership capital amounted to $3,825, and defendant's contribution amounted to $20,790. Both parties go on the theory that the partnership thereupon came into existence and title to the assets vested in it. That same *Page 161 
day the parties called in a lawyer whom they instructed to prepare articles of partnership; they filed in the proper public office a trade name certificate; they transferred the cash to a new bank account opened in the name of the partnership; and they gave to a credit agency a statement of partnership assets and liabilities.
The following day, the lawyer had ready his draft of the partnership agreement, but complainant was not satisfied with it and so refused to sign. The parties negotiated for a few days and then agreed that the defendant should liquidate the property and wind up the partnership affairs. This he proceeded to do. Complainant sues for an account and for his proportionate share of the proceeds.
Annexed to the defendant's answer is a statement of his account, whereby it appears that he realized from liquidation the net amount of $16,154, or $8,561 less than the agreed value of the assets. Complainant contends that the proceeds should be divided between the parties in the proportions of their contributions to the partnership capital. Defendant argues that the loss incurred in liquidation, $8,561, should be divided equally between the parties, and that, as complainant's share of the loss exceeded his contribution to capital, the whole of the net proceeds belongs to defendant.
In the absence of agreement to the contrary, profits and losses from the conduct of the partnership business are apportioned equally among the partners, regardless of their contribution to the capital. Nothing in the present case suggests a different basis for dividing profits and losses. Generally, when a partnership is dissolved and its assets sold, any deficit is borne by the partners in the same ratio as profits would be distributed, even though such deficit arises from depreciation, obsolescence, or diminished market value of capital assets, or the expenses of liquidation. Ratzer v. Ratzer, 28 N.J. Eq. 136; Molineaux v. Raynolds, 54 N.J. Eq. 559, 567; Adams v.Hubbard (Pa.), 70 Atl. Rep. 834; In re Hall (R.I.),79 Atl. Rep. 966. But this rule, I submit, does not apply in this instance. We have here a situation in which the complainant owned an undivided 15.9 per cent. of certain assets, and the defendant owned the other undivided interest. *Page 162 
They turned these assets over to the partnership and then, before any partnership business whatever had been conducted, and while the assets remained intact in their original form, they dissolved the partnership and thereby became again tenants in common in the same proportions as before the creation of the partnership. The assets were sold and brought less than book value, less, doubtless, than they were worth to a going concern. Or to put it another way, the stated value of the assets was more than their actual liquidating value. But this does not indicate that there was a partnership loss. Jones v. Butler, 87 N.Y. 613. The net proceeds should be divided in the proportions of the title of the parties.
While the parties in their pleadings agree that they contributed to the partnership capital in the amounts above stated, complainant at the hearing asked leave to amend so as to show his share was much larger, namely, 38.462 per cent.
Complainant had stock in the predecessor corporation of a par value of $6,250. But he had borrowed from defendant's father-in-law, Garfinkel, $1,886. This debt was paid by the corporation and charged against complainant's capital stock, leaving his investment, $4,364. Defendant's investment was $10,000. By April 24th, 1939, the net assets had shrunk 11 per cent. to $12,779, leaving the value of complainant's undivided interest at $3,925, and defendant's at $8,854. (There appears to be an error of a few dollars in the calculation or perhaps there was some additional small factor which does not appear in the proofs.) Then Garfinkel increased the net assets by canceling a debt of $8,436 due him from the corporation and by putting into the business the further sum of $3,500. His son-in-law, the defendant, was given credit for these additions, making his total $20,790, the figure stated in the bill. Complainant now desires to use the ratio of the original stock issue, 62.5 to 100, or 38.462 per cent. and 61.538 per cent. But certainly a division of the proceeds of the assets on this basis would be inequitable since it overlooks the sundry happenings since the original stock issue, which I have recited. Leave to amend will be denied.
If complainant desires a reference to inquire into the accuracy of the account kept by the defendant, he may have it. *Page 163