THEO. BOTNEN, Respondent, v. OLE G. ECKRE, Appellant.

(171 N. W. 95.)

**Landlord and tenant—conflicting claims of tenants — landlord and tenant — farm lease — when renewed by operation of law.**

1. In the instant case plaintiff and defendant both claim to be lessees of a certain tract of land, and hence each claims to be the owner of certain hay grown thereon during the year 1917. Evidence examined and *held:*

(a) That defendant had no lease for the premises for. the season of 1917, nor was the lease which he held during 1916 renewed for the year 1917 by virtue of §§ 6092, 6094, 6095, and 6096, Compiled Laws 1913.

(b) That plaintiff has a valid lease and was and is the owner, and entitled to the possession, of the hay gathered upon said premises during 1917.

**Trials — trial de novo, when granted — findings of trial court presumed to be correct.**

2. Where an action properly triable by a jury is tried to the court without a jury, the supreme court will not try the case *de novo,* but the findings of the trial court are presumed to be correct. Appellant has the burden of showing error, and a finding based upon parol evidence will not be disturbed, unless shown to be clearly opposed to the preponderance of the evidence.

Opinion filed February 6, 1919.

From a judgment of the District Court of Richland County, *Allen,* J., defendant appeals.

Affirmed.

*Forbes & Lounsbury,* for appellant.

"When there is no contract or usage to the contrary the rental paid for land is presumed to be for one year." Comp. Laws 1913, §§ 6092–6096.

"In replevin the value of the property at the time of its taking is the correct and only measure of damages." Comp. Laws 1913, § 7635; Morris, Replevin, p. 193; 34 Cyc. 1570, 1571; Cobbey, Replevin, p. 511; Nichols & S. Co. v. Paulson, 10 N. D. 440; McLeod v. Capehart, 52 N. W. 381.

*W. E. Purcell,* for respondent.

"In actions at law, unless the sufficiency of the evidence to sustain the findings, verdict, or judgment has been challenged in the lower

court, that question cannot be revived in the supreme court." Morris v. Minneapolis, etc. R. Co. 32 N. D. 366; Buchanan v. Occident Elev. Co. 33 N. D. 346.

"It is in equity actions only that the defeated party is entitled to a trial *de novo* in the supreme court, and it is only in such equitable actions that the supreme court will review the sufficiency of the evidence to sustain the verdict, without appellant making motion for a new trial in the court below." LeClaire v. Wells, 7 S. D. 426, 64 N. W. 519; First Nat. Bank v. Comfort, 4 Dak. 167, 28 N. W. 855; Myers v. Longstaff, 14 S. D. 98, 84 N. W. 233; Hawkins v. Hubbard, 2 S. D. 631, 51 N. W. 774; Hagaman v. Gillis, 9 S. D. 61, 68 N. W. 192; Landis Mach. Co. v. Konantz Saddlery Co. 17 N. D. 310.

"When a law action is tried by the court, the findings of the court have exactly the same weight as the verdict of a jury, and must be given the same weight in the supreme court." Jasper v. Hazen, 4 N. D. 1; Dowagiac Mfg. Co. v. Hellekson, 13 N. D. 257; Ruettle v. Ins. Co. 16 N. D. 546; James River Nat. Bank v. Weber, 19 N. D. 702; State Bank v. Maier, 34 N. D. 259; Novak v. Lovin, 33 N. D. 424.

"The supreme court will not review the evidence in a law action with a view of determining its weight, but only to ascertain whether or not there was sufficient legal evidence to support the verdict or findings." Taylor v. Jones, 3 N. D. 235; Clemens v. Royal Neighbors, 14 N. D. 116; Houghton Imp. Co. v. Vavrowski (N. D.) 125 N. W. 1024; Hall v. N. P. R. Co. 16 N. D. 60; Walklin v. Horswell (S. D.) 13 N. W. 668; Casey v. First Nat. Bank (N. D.) 126 N. W. 1011; Olson v. Day, 23 S. D. 150; Mosteller v. Holborn, 20 S. D. 245; Grand v. Powers Dry Goods Co. 23 S. D. 195; Jackson v. Grand Forks (N. D.) 140 N. W. 718; Seen v. Steffan, 37 N. D. 491; Reed v. Ehr, 36 N. D. 552.

CHRISTIANSON, Ch. J. This is an action to recover the possession of 50 tons of hay, or in case a recovery thereof cannot be had, the value thereof, which is alleged to be $750. The answer is in effect a general denial. The case was tried to the court without a jury. The court made findings of fact in favor of the plaintiff, and fixed the value of

the hay at $600.   Judgment was entered upon the findings, and defendant appeals.

The evidence shows that the hay involved in this controversy was grown upon land belonging to one Hellestvedt.   Some of the land was under cultivation and some of it was hay land.   Hellestvedt by written power of attorney authorized one Ulsaker to rent the land.   And for many years,—at least from 1905 to 1916, both inclusive,—Ulsaker had rented the land to the defendant, Eckre.   A few years ago the defendant was permitted to fence a small portion of the premises.   It appears that for every year,—with one, or possibly two, exceptions,— there was a written lease between the parties.   The leases were identified upon the trial, but have not been transmitted to this court, so we have no means of knowing their terms.   However, from certain statements made during the course of the trial it seems that they were ordinary farm leases, whereby the premises were leased for the farming season of a specified year.   It also appears that Eckre was required to pay a certain cash rent for the hay.   He was also required to plow back each year certain land which had been plowed when he first leased the premises.   Eckre farmed the premises in 1916.   And he claims that some time along in October, 1916, he leased the premises for the farming season of 1917, and hence became entitled to the hay in controversy. The alleged lease was oral.

Defendant's version of the conversation which he claims created the lease is as follows:

He (Ulsaker) asked me if I would get the land plowed that fall, and I told him it was so wet I wasn't going to get any plowing done,—I told him I simply couldn't plow, it was too wet, and then he said it would be in poor shape in the spring if it wasn't plowed in the fall; and I said we can, if the spring is good,—I will plow some of it in the spring, and if it ain't, why I will summer-fallow it; that is all that was said.

Q. What did he say about that?

A. Well, why I think he said, "All right" or something to that effect.

The defendant did not put any of the land into crop in the spring of 1917; nor did he plow any of it either in the fall of 1916 or in the spring of 1917.   He did, however, commence to do some plowing about July 20, 1917.

On July 13, 1917, the plaintiff, Botnen, entered into a written "hay"

lease with Ulsaker, under the terms of which he became entitled to cut and gather all growing grasses on the premises. Botnen thereafter entered upon the premises and commenced to cut and stack the hay. The defendant, however, interfered, and (to use his own language) "chased him [Botnen] off." After driving plaintiff off the premises, the defendant proceeded to exercise dominion over the premises and appropriated all the hay to his own use.

Defendant claims that under the facts which existed on and prior to July 13, 1917, he (defendant) had become entitled to retain the premises for another year under the provisions of §§ 6092, 6094, 6095, and 6096, Compiled Laws 1913, and that consequently plaintiff's lease was and is invalid. The statutory provisions invoked read:

"6092. A hiring of real property, other than lodgings, in places where there is no usage on the subject, is presumed to be for one year from its commencement, unless otherwise expressed in the hiring."

"6094. If a lessee of real property remains in possession thereof after the expiration of the hiring, and the lessor accepts rent from him, the parties are presumed to have renewed the hiring on the same terms and for the same time not exceeding one year."

"6095. A hiring of real property for a term not specified by the parties is deemed to be renewed as stated in the last section at the end of the term implied by law, unless one of the parties gives notice to the other of his intention to terminate the same at least as long before the expiration thereof as the term of the hiring itself, not exceeding one month."

"6096. When there is no contract or usage to the contrary the rent of agricultural and wild lands is payable yearly at the end of each year. . . ."

In our opinion defendant's contentions are entirely without merit. It seems too clear for argument that the conversation between defendant and Ulsaker did not create a new lease or an extension of the existing one. It was defendant's duty to plow back certain land. This duty depended not upon whether defendant leased the premises for the season of 1917, but upon the terms of the lease under which he had been occupying the premises in 1916. The statutory provisions invoked have no application. The leases which defendant had received during the several years (so far as we can tell from the record before us) were

leases for the farming season of each year only. The defendant in this case paid no rent for 1917, and the landlord accepted no such rent. There is, in our opinion, only one conclusion which can be drawn from the evidence in this case, and that is the one which the trial court drew. And we have no hesitancy whatever in reaching the conclusion that the plaintiff was and is the owner, and entitled to the possession, of the hay described in the complaint, or the value thereof in event a delivery of the hay cannot be had.

Defendant also contends that the judgment is excessive. This action is one properly triable to a jury, and is not to be tried anew in this court. The findings of the trial court are based upon parol evidence. They are presumed to be correct, and will not be disturbed unless shown to be clearly opposed to the preponderance of the evidence. State Bank v. Maier, 34 N. D. 259, 158 N. W. 346. In this case there is a conflict in the evidence both as to the amount and value of the hay. There is evidence from which the court might have rendered a judgment against the defendant for even a larger amount. We see no reason for reducing the judgment. There is nothing to indicate that the defendant was not afforded a fair trial. The judgment appealed from is affirmed.